Joe WILLIAMS and Daisy Williams,
Plaintiffs-Respondents,

v.

David McGILL, Defendant-Appellant.

No. 13799.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 21, 1986.

John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, James E. Curry, Ava, for defendant-appellant.

Michael J. Patton, M. Sean McGinnis, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, Grant Q. Haden, Wade & Haden, Ava, for plaintiffs-respondents.

FLANIGAN, Judge.

Plaintiffs Joe Williams and Daisy Williams brought this action in replevin, Rule 99,[1] against defendant David McGill, seeking possession of a 1979 GMC pickup truck and a trailer. The trial court, after a non-jury trial, entered judgment in favor of plaintiffs and against defendant McGill and the sureties on his redelivery bond. The judgment required delivery of possession of the truck and trailer to the plaintiffs or, if plaintiffs so elected, awarded plaintiffs $6,769.18 representing the value of plaintiffs' interest in the vehicles. Plaintiffs elected to accept the monetary judgment. Defendant McGill appeals.

In general, defendant challenges the judgment on the grounds that he had a right to possession of the truck and trailer, that plaintiffs had no right to possession, and that, in any event, the monetary judgment is excessive.

In April 1982 the Missouri Director of Revenue issued separate certificates of title to the truck and the trailer. Both certificates showed the owners to be "Douglas Garges or David McGill."

On September 16, 1982, Douglas Garges and David McGill assigned the titles to the truck and trailer to "Douglas Garges or Karla Garges." On that date, in connection with these transfers, defendant executed an affidavit stating, "I am giving [the truck] to Douglas Garges and Karla Garges." Defendant executed a similar affidavit with respect to the trailer. No liens were listed in the transfer documents. The Gargeses immediately took possession of the truck and trailer. In October 1982 the Director of Revenue issued separate certificates of title showing ownership of the truck and trailer to be in Douglas Garges or Karla Garges, with no outstanding liens.

On November 17, 1982, the Gargeses borrowed $5,000 from plaintiffs. The loan was evidenced by a note which was accompanied by a security agreement identifying the truck and trailer and giving the plaintiffs a security interest in them as collateral for the loan. Also on November 17, 1982, or at least within 30 days of that date, plaintiffs sent to the Director of Revenue the certificates of title to the truck and trailer, together with separate applications, signed by Douglas Garges, for certificates of ownership containing the name and address of the plaintiffs as lien holders and the date of the security agreement and the "required certificate of ownership fee," all as required by § 301.600.2. The Director of Revenue issued separate certificates of title to the truck and to the trailer on May 5, 1983, and mailed the certificates to plaintiffs who were shown as first lien holders. Each certificate recited that the lien was created on November 17, 1982.

At some indefinite date after November 17, 1982, apparently in "early December" of that year, defendant McGill took possession of the truck and trailer without the knowledge or consent of Garges. McGill testified that while the truck was in his possession, it "was destroyed—when I wrecked it." Plaintiff Williams testified that "about a month after I loaned Garges

the money," defendant called Williams and told Williams that he had the truck and trailer in his possession. Williams also testified, "When I informed [defendant] that I had a lien on [the truck and trailer], [defendant] told me that [Garges] owed him some money and that he had gone and taken it, and that he would wreck the [truck] before he would let [Garges] have it back." Williams also testified that the conversation with McGill made him feel "insecure," and that he immediately, through his attorney, demanded that Garges make full payment on the note. Payment of the note, by its terms, was then due. Garges made no payment and this action ensued.

Defendant, as his own witness, testified that the transaction of September 16, 1982, between him and Garges, was a "cash sale" of the truck in which defendant was the seller and Garges was the buyer. Defendant also testified that Garges had not paid him the purchase price.

■ Defendant's first point is that he, as an unpaid seller of the "truck and trailer," had the right to "rescind the sale" to Garges and to "reclaim possession of the truck and trailer" when Garges failed to pay the cash purchase price for the truck.

The only witness who testified that the transaction of September 16, 1982, was a cash sale was defendant himself. Garges' testimony, in essence, was to the contrary. Defendant's first point makes the invalid factual assumption that he was an unpaid seller. Defendant's own affidavit, executed at the time of the September 16 transaction, described it as a "gift." At the trial defendant conceded that he signed that false affidavit "to save the sales tax."

Neither side made a request, authorized under Rule 73.01, that the trial court state the grounds for its decision and the trial court did not do so. That being the situation, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(2). Thus it is unclear from the record whether the trial court merely rejected defendant's trial testimony that he was an unpaid cash seller or whether the trial court attached no legal significance to that testimony even if it were true.

Defendant asks this court to accept his trial testimony that the September 16 transaction was a sale. This court declines to do so. It is, accordingly, unnecessary to determine what rights, if any, defendant would have had with respect to the possession of the truck and trailer if in fact the September 16 transaction was a cash sale in which defendant was the unpaid seller. Defendant's first point has no merit.

■ Defendant's second point restates his first point, which this court has rejected, and then states that defendant's right to possession of the truck and trailer was superior to plaintiffs' right to possession because plaintiffs failed to perfect their security interest in the truck and trailer until some date after defendant had retaken possession from Garges.

Section 301.600.2 reads:

"A lien or encumbrance on a motor vehicle or trailer is perfected by the delivery to the director of revenue of the existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. It is perfected as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery."

Plaintiff Joe Williams testified that on November 17, 1982, at the time he made the $5,000 loan to Garges and took the security agreement, Garges "brought his title to the two vehicles and the trailer" and gave me "an assignment on the title." Williams further testified that "within 30 days" he sent the documents to the Director of Revenue and "they came back." The director, according to Williams, required additional information "regarding the mileage." Williams testified, "I knew that David McGill had possession of the

vehicle. That was the delay of my getting the title back." When the title certificates on the truck and trailer were issued by the director in May 1983, each certificate showed that the vehicle was subject to a first lien in favor of plaintiffs and that the lien was created on November 17, 1982.

The record justified the trial court in finding that all steps required by § 301.-600.2 to perfect a lien were taken so as to perfect it as of the time of its creation except for the giving of mileage information apparently called for by the application mentioned in that statute. The record supports the inference that the mileage information would have been provided to the director, within the 30-day period prescribed by the statute, except for the fact that defendant, during that period, improperly took possession of the vehicles and deprived plaintiffs of access to that information. Defendant may not profit by his own misconduct and the record justifies a finding that he is estopped to challenge the accuracy of the statement, on the two title certificates, that plaintiffs' liens were in fact created on November 17, 1982. Defendant's second point has no merit.

Defendant's third point is that the trial court improperly assessed the value of plaintiffs' interest in the truck and trailer. Using the word "property" to refer to the truck and the trailer, the judgment recites: "The value of plaintiffs' interest in said property [is] assessed at the sum of $6,769.18, being the note value on March 28, 1984, of $6,019.18 plus $750 attorney's fees incurred in collection of the same."

Defendant asserts, in his third point, that there was no agreement between defendant and plaintiffs which would obligate defendant to pay attorney's fees, that attorney's fees are not recoverable as costs in a replevin action, that no interest should have been awarded because defendant did not execute the note or guarantee its payment and that plaintiffs are entitled to interest, if at all, only at the legal rate and only from the date defendant took possession of the truck and trailer. The latter date, argues defendant, was not established by the evidence and thus the award of interest is based on speculation.

Douglas Garges, owner of the truck and the trailer, testified that they had a combined value of $8,500. It is a reasonable inference that the witness referred to their value on November 17, 1982, when he obtained the loan from plaintiffs. Plaintiff Joe Williams testified, without objection, that the truck was worth $5,000 and the trailer was worth $5,000. Since defendant took possession of the vehicles within two weeks or so after the loan was made, and the damage to the truck did not occur until defendant "wrecked it," these estimates constitute substantial evidence of the values when defendant took possession.

Rule 99.12 reads:

"When the court or jury finds that a party not in possession of the property is entitled to possession of the property the value of the property shall be determined and damages for the taking, detention or injury may be assessed. The judgment shall be against the party and his sureties for the return of the property or the value of the property, at the election of the party entitled to possession, and for damages assessed for the taking, detention or injury."

The "value of the property," under the evidence, was at least $8,500 and perhaps $10,000 when defendant took possession. Any diminution in the value of the truck occasioned by defendant's "wrecking it" would properly be allowable as "damages assessed for the taking, detention or injury." Defendant is not entitled to any benefit for any diminution in value occasioned by his wrecking of the truck.

In *Dilworth v. McKelvy*, 30 Mo. 149 (1860), a replevin action, the plaintiff was the general owner of the property and the defendant claimed a lien on it. The property was delivered to the plaintiff prior to trial. The jury found for the defendant and a judgment was rendered, in favor of the defendant, for the full value of the property or, at the option of the defendant, for its return.

At pp. 153–154 the supreme court said:

"Where the defendant has only a special interest in the property, the jury or

court should assess the value of that interest. To assess the absolute value in such cases would lead to manifest injustice, as the result in the present case may serve to illustrate. Here, the defendant only claimed a lien on the lumber sued for to an amount less than a fourth of its value, and he gets a judgment for four times the sum he claims, or for the return of the property, with the privilege of electing which of these judgments he will enforce. So that if this judgment is to be held conclusive and matters are to remain in this position, he is put in possession, if he so chooses, of a sum of money to which he concedes himself to have no right whatever, or another suit must be had to give the parties their just rights. The real subject of controversy is left undetermined; the defendant's interest in the property is not ascertained."

The court held that the judgment properly should have been for the value of the defendant's interest or for return of the property until that value was paid, at the option of the defendant.

The court also said, at p. 154: "Of course, if the plaintiff chooses to pay the amount of the lien, the defendant has no alternative but to receive it, and his right to the possession of the property ceases."

The court then said, at pp. 154–155:

"Where the defendant has only a special interest and the plaintiff is a *stranger*, then the entire value, according to the ancient doctrine of the common law, may be recovered by the special owner, who is answerable over to the general owner for whatever interest remains after the special claim is satisfied. In such cases the general value of the property would be assessed without regard to the value of the special interest." (Emphasis in original.)

It is true that the foregoing statement is dictum but it was quoted and applied in *Faloln v. Manning*, 35 Mo. 271, 275 (1864). It is also consistent with encyclopedic authority. "In an action against a stranger or a trespasser ab initio, however, the mortgagee may recover the full value of the property." 14 C.J.S. Chattel Mortgages § 245, p. 863. See also 69 Am.Jur.2d Sec. Trans. § 260, p. 87.

Defendant testified that while he had the truck "it's been destroyed ... when I wrecked it." As pointed out in Phillips v. Ockel, 609 S.W.2d 228, 232[9–11] (Mo.App.1980), the general rule is that in a replevin action property value is to be assessed at the time of trial and not at the time of taking. The court said, "The exception of this rule is the situation in which the property cannot be fairly valued as of the date of trial, e.g., where the defendant sold, destroyed or disposed of it." The court found sufficient evidence "for the trial court to conclude that the property was generally in good condition when removed by defendant and badly deteriorated at the time of trial. Hence plaintiff's testimony regarding the property value *at the time the cause of action accrued* was competent evidence of actual damages." (Emphasis added.)

The instant record justified the trial court in finding that the value of the truck, at the time of defendant's taking, was $5,000 and that the value of the trailer, on November 17, 1982, was $5,000. The case was tried in May 1984 and the record supports the inference that the value of the trailer at the time of the trial had not substantially diminished. Defendant does not challenge the adequacy of the evidence with respect to proof of the value of the truck or trailer. The record makes it clear that their combined value exceeded the amount of the monetary judgment which plaintiffs elected to take.

Under the principle stated in *Dilworth*, supra, plaintiffs were entitled to recover the entire value of the truck and trailer from the defendant, who was a "stranger," and to be answerable over to

Garges, the "general owner," "for whatever interest remains after the special claim is satisfied."

 Plaintiffs limited the prayer of their petition to the amount of their special interest and for that reason the judgment was so limited. Since defendant's conduct, under a proper prayer, would have exposed him to a judgment for the full value of the truck and trailer, he may not complain of the amount of the instant judgment which is substantially less. Rule 84.13(b) precludes the reversal of any judgment unless the appellate court finds that error was committed by the trial court against the appellant materially affecting the merits of the action. There is no such error here.

The judgment is affirmed.

TITUS, P.J., and GREENE, J., concur.